LINDA DURAN, Plaintiff-Appellant, v. LESLIE OLDSMOBILE, INC., Defendant-Appellee (CIM Insurance Corporation, Defendant).

Second District   No. 2—91—0701

Opinion filed June 11, 1992.

Lehrer, Flaherty & Canavan, P.C., of Wheaton (Maureen Flaherty, of counsel), for appellant.

Sandra K. Macauley, of Lord, Bissell & Brook, of Chicago (Gerald O. Sweeney, Jr., of counsel), for appellee.

JUSTICE NICKELS delivered the opinion of the court:

The circuit court of Du Page County granted defendant's, Leslie Oldsmobile, Inc.'s (dealer's), motion for summary judgment, which plaintiff now appeals. Plaintiff's complaint sought actual and punitive damages and attorney fees and costs based on common-law fraud and statutory fraud under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*). Specifically, plaintiff alleged that the dealer made four misrepresentations as follows: (1) a 1988 Volkswagen Jetta was a demonstrator (demo) car; (2) an extended warranty on the Jetta would be effective from the date and mileage at which plaintiff purchased the car; (3) the dealer could and would obtain the lowest possible new-car financing rate; and (4) such rate was 14.25%. In fact, the Jetta was used and had been previously titled to and driven by a national rental-car company located at O'Hare International Airport; 11 months and 7,000 miles of any extended warranty had expired during such prior usage, and the 14.25% financing rate was for a used car, which was significantly higher than the prevailing rate for financing new cars. The circuit court held that plaintiff's reliance on the dealer's alleged oral misrepresentations concerning the Jetta and the extended warranty was unreasonable in light of plaintiff's signature on certain documents (sales forms) that expressly contradicted the alleged misrepresentations. The circuit court further found that the dealer's representation that it could obtain the lowest financing rate was a future promise inactionable under both the common law and the Consumer Fraud Act. Finally, the circuit court found that plaintiff suffered no damages as a result of the dealer's alleged misrepresentation that the 14.25% rate was the lowest available because she returned the car without making any installment payments.

Plaintiff appeals asserting summary judgment was inappropriate because: (1) either her prior execution of a "Retail Order for a Motor Vehicle" (retail order form), which did not contradict the dealer's salesman's alleged misrepresentations, or the lack of the opportunity to review the subsequently completed sales forms and discover the contradiction created a question of material fact as to the reasonableness of her reliance; and (2) the pleadings, depositions, and affidavits demonstrated a factual basis to infer damages; proof of damages is unnecessary to sustain a cause of action under the Consumer Fraud Act; or nominal damages may be presumed under the Consumer Fraud Act based on the dealer's alleged violation of the Act.

The over 1,300 pages of pleadings, affidavits and depositions describe the events before, during, and after plaintiff's purchase of a 1988 Volkswagen Jetta from the dealer. On Friday, December 9, 1988, plaintiff spontaneously visited the dealer's Volkswagen showroom, although she had been planning on purchasing a car for several weeks and was specifically interested in a Jetta. Plaintiff was temporarily driving a rental car because her insurer had determined that an accident had totally destroyed plaintiff's previous car.

Plaintiff spent two hours with the dealer's salesman, during which time plaintiff inspected the Jetta, discussed financing, negotiated the price of the vehicle, and ascertained the cost of a 6-year/60,000-mile extended warranty. Plaintiff alleged that she specifically told the salesman that she wanted a new or demo car and not one that had been used. As the dealer's general manager testified at his deposition, a demo in Illinois is a car that has not been titled and is the equivalent in value to a new car, although it has been previously driven by an employee of either the manufacturer or the dealer.

Plaintiff alleged that the salesman told her that the Jetta, which had been driven over 7,000 miles, was a demo. In response to plaintiff's request to see the documents showing the history of the Jetta, the salesman told her that the paperwork on the history of the Jetta was unavailable because it was locked up for the weekend, but that he believed it had been driven by an employee of the manufacturer rather than an employee of the dealer. However, both the general manager and sales manager were present at the dealership that day and had access to the files containing the Jetta's prior ownership history. As part of the negotiations, the salesman allegedly told plaintiff that the dealer would obtain financing at the lowest available new-car rate. In response to plaintiff's inquiry concerning a warranty that would last until she completed installment payments on such financing, the salesman told plaintiff that a 6-year/60,000-mile extended warranty effective beginning with plaintiff's purchase of the Jetta was available for a price of $625. However, the dealer's employee responsible for such extended warranties testified at her deposition that a 6-year/60,000-mile extended warranty costs $625 and begins with the date a car is first placed in service at 0 miles. Therefore, despite payment for 6 years and 60,000 miles of coverage, plaintiff would have received something less than 53,000 miles and 5 years and 1 month of coverage.

After negotiations over the price of the Jetta, the salesman completed in handwriting the blanks on the preprinted retail order form, including the price, plaintiff's deposit, and the transfer of the remaining manufacturer's factory warranty. However, the salesman did not

complete that preprinted portion of the form requiring him to check a box describing the vehicle as either new or used. Plaintiff signed the retail order form and gave the salesman a $200 check as a deposit, and the order was accepted by the dealer. While waiting for the sales forms to be completed, plaintiff ran two brief errands, first to return her rental car and then later to pick up her young son from day-care, because the sales forms were still not complete.

Sometime after 5 p.m., the dealer's general manager, who was acting as the finance manager that day as well, eventually completed the sales forms including an invoice, retail installment contract, extended-warranty agreement, revenue department form, and odometer statement to conclude the sale, each of which plaintiff signed. However, plaintiff testified at her deposition that when she attempted to review the sales forms by laying them on a chair next to her while also trying to watch her young son, the dealer's manager asked plaintiff to wait until he completed the transaction so that the documents would not get out of order. Plaintiff gave the dealer a second check in the amount of $1,800 as partial payment for the Jetta.

Although the invoice, retail installment contract, and revenue department forms expressly indicated that the Jetta was a used car, those documents more specifically concerned the warranty, financing rates, and sales tax respectively. The description of the Jetta as used contained therein was merely incidental to such other information. When plaintiff noticed the 14.25% financing rate, she asked the general manager whether it was the lowest available new-car rate to which he replied affirmatively.

Plaintiff took delivery of the Jetta and drove it home. That evening, a friend of plaintiff's, who was also an attorney, spent the evening with her and noticed the 14.25% rate, which he thought excessive. However, due to the lateness of the hour, plaintiff insisted that her friend wait until the following morning to review the rest of the sales forms. At that time, both plaintiff and her friend discovered that the sales forms indicated that the Jetta was a used car. After confirming that new-car financing rates were significantly lower, they concluded that the 14.25% rate was for a used car. After several unsuccessful attempts to speak with the general manager by telephone, plaintiff together with her friend sought to return the Jetta in exchange for an actual new or demo model. Plaintiff's friend identified himself as her attorney during that discussion. The dealer refused to rescind the purchase or exchange the Jetta except at an increased cost to plaintiff. Therefore, plaintiff and her friend left the dealer's facilities with the Jetta.

On Monday, plaintiff discovered that the Jetta had in fact been titled to a national rental-car chain located at O'Hare International Airport. Plaintiff stopped payment on the checks she had issued as a deposit and down payment on the Jetta and at 5 p.m. that day returned the Jetta to the dealer's facility after requesting a police officer to be present to witness the return of the Jetta. The leasing company from whom plaintiff had rented temporary transportation prior to this transaction once again furnished her with a short-term leased car at that time.

In December 1988, two separate entities existed, one selling Volkswagens and one, which we have referred to as the dealer, selling Oldsmobiles. The facilities were located adjacent to each other and shared common management and salespersons. The forms used in this instance originated from both the Oldsmobile and Volkswagen entities. However, during the pendency of this proceeding on January 1, 1990, the separate identity of the Volkswagen entity was merged into the Oldsmobile entity. In March 1989, plaintiff filed this suit in two counts alleging common-law fraud and a violation of the Consumer Fraud Act and naming Leslie Oldsmobile as defendant. In November 1990, after the entities had merged, Leslie Volkswagen filed a separate small claims action against plaintiff to enforce the retail order form, which was consolidated with the present action. Attached to its small claims complaint Leslie Volkswagen attached a copy of plaintiff's second check containing a handwritten notation that it had been returned to plaintiff on December 30, 1988, without any attempt to cash it.

Leslie Oldsmobile then asserted as an affirmative defense that Leslie Volkswagen, and not Leslie Oldsmobile, was the proper defendant because two separate entities existed. Leslie Oldsmobile then filed a motion for summary judgment that included an allegation that no attempt to enforce the contract had been made and, therefore, plaintiff could claim no damages. Plaintiff opposed that motion relying in part on Leslie Volkswagen's attempt to enforce the retail order form as evidence of damages. Over plaintiff's objection, the small claims action was dismissed with prejudice. The circuit court then granted the dealer's motion for summary judgment.

The circuit court found plaintiff's reliance on the alleged misrepresentations regarding the Jetta and the extended warranty unreasonable in light of her signature on the sales forms, which expressly noted that the Jetta was used and that the extended warranty dated from January 1988 and 0 miles. The circuit court found that plaintiff's allegation relating to the dealer's promise to secure the lowest available financing was a future promise not actionable under either the com-

mon law or Consumer Fraud Act. Finally, the circuit court found plaintiff's return of the Jetta without any payments at the 14.25% rate defeated both her claim under the common law and Consumer Fraud Act for lack of damages. Plaintiff now appeals asserting that questions of material fact were raised by the pleadings, depositions, and affidavits that precluded entry of summary judgment as a matter of law.

Summary judgment should be awarded with caution so that the right to present a case in which a material dispute exists and to a trial by jury is not preempted. (*Hagy v. McHenry County Conservation District* (1989), 190 Ill. App. 3d 833, 842.) It is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2–1005(c); *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240; *Hagy*, 190 Ill. App. 3d at 842.) The evidence in the record must be construed strongly against the movant and in favor of the nonmovant. (*Dockery v. Ortiz* (1989), 185 Ill. App. 3d 296, 304-05.) If there is no dispute as to any material fact and the undisputed facts permit but one inference, it is only the legal effect of such facts that is at issue, and a court should grant summary judgment. (*Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294; *Dockery*, 185 Ill. App. 3d at 304.) A party's right to summary judgment must be clear and free from doubt before it may be granted. (*Purtill*, 111 Ill. 2d at 240.) The purpose of summary judgment is not to try questions of fact, but rather to determine if such questions exist. *Addison*, 124 Ill. 2d at 294; *Dockery*, 185 Ill. App. 3d at 304.

To prevent the entry of summary judgment, an opponent must present a *bona fide* factual issue and not merely general denials and conclusions of law. (*Wil-Shore Motor Sales, Inc. v. Continental Illinois National Bank & Trust Co.* (1984), 130 Ill. App. 3d 167, 172.) An issue is "genuine" only if there is evidence to support the position of the nonmoving party. (*N.W. v. Amalgamated Trust & Savings Bank* (1990), 196 Ill. App. 3d 1066, 1075.) Thus, although the party opposing summary judgment need not prove his case at this preliminary stage, he must present some factual basis that would arguably entitle him to a judgment under the applicable law. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 939.) Only facts related to the essential elements of the plaintiff's cause will be considered, no matter how sharply controverted other immaterial facts in the record might be. *Fuller*, 117 Ill. App. 3d 939.

Because the circuit court entered summary judgment for the dealer as a matter of law based on its finding that plaintiff failed to allege necessary elements of both her cause of action for common-law

fraud and for fraud under the Consumer Fraud Act, we must first set out those elements. The elements of common-law fraud are: (1) a statement by defendant; (2) of a material nature as opposed to opinion; (3) that was untrue; (4) that was known or believed by the speaker to be untrue or made in culpable ignorance of its truth or falsity; (5) that was relied on by the plaintiff to his detriment; (6) made for the purpose of inducing reliance; and (7) such reliance led to the plaintiff's injury. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286; *Parsons v. Winter* (1986), 142 Ill. App. 3d 354, 359.) In addition, such reliance must be reasonable. *Soules*, 79 Ill. 2d at 286.

■ The majority of the elements of common-law fraud have been eliminated by the Consumer Fraud Act, and it affords broader consumer protection than the common-law action of fraud by prohibiting *any* deception or false promise. (*Richard/Allen/Winter, Ltd. v. Waldorf* (1987), 156 Ill. App. 3d 717, 721; *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 198.) Therefore, to state a cause of action for statutory fraud, a plaintiff is not required to prove all the elements of common-law fraud. (*Perlman*, 64 Ill. App. 3d at 198.) However, despite the number of cases decided by our appellate courts under the Consumer Fraud Act, the elements of a statutory fraud cause of action have not been specifically articulated. Therefore, we must review those specific decisions that have considered each individual element of common-law fraud to determine which of those elements also remain an element of a cause of action for statutory fraud.

■ The Consumer Fraud Act eliminated the requirement of *scienter*, and innocent misrepresentations are actionable as statutory fraud. (*American Buyers Club of Mt. Vernon, Illinois, Inc. v. Honecker* (5th Dist. 1977), 46 Ill. App. 3d 252, 259; *Beard v. Gress* (4th Dist. 1980), 90 Ill. App. 3d 622, 627-28.) In *Duhl v. Nash Realty Inc.* (1st Dist. 1981), 102 Ill. App. 3d 483, statutory fraud was held to include misrepresentations of not only existing material facts, but of future promises (*Duhl*, 102 Ill. App. 3d at 495), although the materiality of the misrepresented fact is still an element of a claim under the Consumer Fraud Act (*Mack v. Plaza DeWitt Ltd. Partnership* (1st Dist. 1985), 137 Ill. App. 3d 343, 350). A plaintiff's diligence in ascertaining the accuracy of misstatements was also eliminated as an element of fraud by the Consumer Fraud Act. *Beard*, 90 Ill. App. 3d at 627-28; see also *Munjal v. Baird & Warner, Inc.* (2d Dist. 1985), 138 Ill. App. 3d 172, 182.

Finally, damages remain an element of a cause of action under the Consumer Fraud Act. (*Greenberg v. United Airlines* (1990), 206 Ill. App. 3d 40, 45-46; *Warren v. LeMay* (5th Dist. 1986), 142 Ill. App. 3d

550, 569.) However, we must discuss the decision of the Appellate Court, First District, in *Greenberg* in some detail. Not only plaintiff, but the dealer and the circuit court below as well, relied on *Greenberg*, which appears to find both that allegations of damages are required and that allegations of damages are not required.

Before turning to the specific language of *Greenberg*, we note that both the court in *Greenberg* and the circuit court below relied on the 1979 version of the Consumer Fraud Act, which contained language apparently limiting a private cause of action to one of the enumerated violations (see Ill. Rev. Stat. 1979, ch. 121½, par. 270a ("[a]ny person who suffers damage as a result of a violation of [sections 2 through 2N of] this Act")) and which was amended in 1988 to delete reference to the enumerated specific violations and instead broadened to include *any* violation of the Consumer Fraud Act. Although such application of the incorrect law may have affected the decision of the circuit court below, it is not material to our interpretation of the holding of *Greenberg*.

The applicable language in *Greenberg* provides that the Consumer Fraud Act permits "a cause of action for damages and a violation can be found even if no damages are suffered." (*Greenberg*, 206 Ill. App. 3d at 45.) *Greenberg* then goes on to cite the statutory language declaring certain conduct unlawful "whether any person has in fact been misled, deceived or damaged thereby." (*Greenberg*, 206 Ill. App. 3d at 45-46.) *Greenberg* then concluded that the Consumer Fraud Act allows a private cause of action if a plaintiff can show that he "suffered damages as [a] result" of the unlawful conduct. (*Greenberg*, 206 Ill. App. 3d at 46.) Thus, although a *violation* of the Consumer Fraud Act may occur in the absence of damages, a *private cause of action* does not arise absent a showing of both a violation and resultant damages. *Greenberg* merely recognized the distinction between a violation absent damages, which the Attorney General may prosecute (Ill. Rev. Stat. 1989, ch. 121½, par. 263), and a violation causing damages, which either the Attorney General or a private party may pursue (Ill. Rev. Stat. 1989, ch. 121½, par. 270a).

Plaintiff asserts, however, that nominal damages may be presumed based on a violation of the Consumer Fraud Act. A venerable principle of the law was the presumption of damages from every infringement of a right. (*Crosby v. City of Chicago* (1973), 11 Ill. App. 3d 625, 629.) However, that rule has been expressly abandoned in Illinois in negligence actions. (*Crosby*, 11 Ill. App. 3d at 629.) Rather, the presumption continues only for intentional torts. (*Crosby*, 11 Ill. App. 3d at 630 (supplemental opinion after rehearing).) However, in expanding the ap-

plication of the Consumer Fraud Act to provide broader protection to consumers than that found under common-law fraud, the legislature eliminated the element of intent, and innocent misrepresentations are now actionable. (*American Buyers Club, Inc.*, 46 Ill. App. 3d at 259.) In the absence of a mental state equivalent to that of an intentional tort, we find damages may not be presumed under the Consumer Fraud Act.

◼ Finally, reliance by the buyer remains an element of a cause of action under the Consumer Fraud Act. Section 10a specifically provides that "[a]ny person *who suffers damage as a result* of a violation of *** this Act committed by any other person may bring an action against such person." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 121½, par. 270a(a).) Thus, just as with damages, reliance remains an element of a private cause of action although it has been eliminated as a requirement for actions brought by the Attorney General.

Although the decision of the Appellate Court, First District, in *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, appears to otherwise hold, *Brooks* is not controlling because it was decided under a prior version of the Consumer Fraud Act that did not expressly provide for a private cause of action. (*Brooks*, 47 Ill. App. 3d at 272-73.) The legislature subsequently amended the Consumer Fraud Act to conform to judicial interpretations of the statute and to expressly allow a cause of action only when a violation results in damages. (See Ill. Rev. Stat. 1985, ch. 121½, par. 270a.) Moreover, *Brooks* addressed the propriety of a class certification and whether class questions predominated over individual questions. (*Brooks*, 47 Ill. App. 3d at 272-73.) However, as was explained in *Hayna v. Arby's, Inc.* (1981), 99 Ill. App. 3d 700, in deciding whether common questions predominate over individual questions, the focus is on the *violation* of the Consumer Fraud Act. (*Hayna*, 99 Ill. App. 3d at 711.) Therefore, in the context of certification of a class, it is the intent of the seller, rather than individual reliance of the buyer required for the private cause of action, that is dispositive. *Hayna*, 99 Ill. App. 3d at 711.

◼ In contrast to common-law fraud, to state a cause of action for fraud under the Consumer Fraud Act a plaintiff must allege: (1) a statement by the seller; (2) of an existing *or future* material fact; (3) that was untrue, *without regard to the defendant's knowledge or lack thereof of such untruth*; (4) made for the purpose of inducing reliance; (5) on which the victim relied; and (6) which resulted in damages to the victim. With these elements of common-law fraud and fraud under the Consumer Fraud Act in mind, as well as the distinctions between these causes of action, we now turn to the alleged misrepresentations to de-

termine if plaintiff sufficiently alleged facts to support an inference of each of the necessary elements.

■■ We consider first the circuit court's finding that plaintiff's signature on the sales forms rendered plaintiff's reliance on the salesman's alleged misrepresentations unreasonable. (See *Belleville National Bank v. Rose* (1983), 119 Ill. App. 3d 56, 59-61.) The reasonableness of a plaintiff's reliance is determined at the time such plaintiff acts in reliance on the misrepresentation. (*Buechin v. Ogden Chrysler-Plymouth, Inc.* (1987), 159 Ill. App. 3d 237, 247-48.) The signing of a buyer's order creating a binding contractual obligation is conduct in reliance on the representations that preceded such conduct. (*Buechin*, 159 Ill. App. 3d at 247-48.) A plaintiff's subsequent opportunity to inform himself of the true facts contradicting such misrepresentation cannot render such prior reliance unreasonable. *Buechin*, 159 Ill. App. 2d at 248.

Contrary to the dealer's assertions, plaintiff testified at her deposition that the salesman hand wrote the information concerning the Jetta on the blanks in the preprinted retail order form omitting the fact that the Jetta was used and that plaintiff signed the retail order form several hours before the general manager/finance manager completed the other documents containing the true information. Thus, plaintiff acted in reliance on the salesman's representation not when she signed the sales forms containing the true information, but rather when she relied on the alleged misrepresentations of the salesman and executed the retail order form. (See *Buechin*, 159 Ill. App. 3d at 248, 250.) On execution, the retail order gave rise to plaintiff's obligation to the dealer, which the dealer in fact attempted to enforce during the pendency of this suit when it filed its small claims action against plaintiff. Plaintiff's later opportunity to discover the alleged misrepresentation does not alter the nature of her conduct or reliance as reasonable at the time she signed the retail order form and entered that contract. See *Buechin*, 159 Ill. App. 3d at 248, 250.

■■ The dealer also asserts that plaintiff's failure to attach the retail order form to either her original or amended complaint precludes her from relying on such document. However, we consider all the pleadings and must do so in the light most favorable to plaintiff, including any reasonable inferences that may be drawn from such pleadings in their entirety. (*Dockery*, 185 Ill. App. 3d at 304.) It is entirely reasonable to infer that the retail order form was omitted from plaintiff's pleadings because the omissions therein contained neither supported nor contradicted the alleged oral misrepresentations. However, the dealer attacked the reasonableness of plaintiff's reliance on such

alleged misrepresentations, and the retail order form is evidence of the reasonableness of plaintiff's reliance at the moment she became contractually obligated to the dealer. The circuit court erroneously found that plaintiff's reliance occurred when she executed the sales forms and, therefore, erred in finding that plaintiff's reliance was unreasonable.

We next consider the circuit court's finding that plaintiff's reliance on the alleged misrepresentation as to the extended warranty was unreasonable. It found that the plaintiff's reliance on the salesman's representation of the duration of the extended warranty was unreasonable because of the express contradiction of such representation in the eventual written warranty agreement. Plaintiff's deposition testimony indicated that the alleged oral misrepresentation of the availability of an extended warranty was a factor in her decision to purchase the demo Jetta despite its prior use. Thus, plaintiff relied on the misrepresentation of the extended warranty not only in deciding to purchase the extended warranty itself, but in deciding to purchase the Jetta. As we have found, such reliance was reasonable at the time of plaintiff's decision to purchase the Jetta. Therefore, we find that her reliance on the alleged misrepresentation of the extended warranty was also not unreasonable for that purpose.

The circuit court next found that plaintiff's reliance on the salesman's alleged misrepresentations of the availability of low-cost financing was unreasonable because it was an inactionable promise to do something in the future. (*Soules*, 79 Ill. 2d at 286; *Parsons*, 142 Ill. App. 3d at 359.) Although this finding was correct under common-law fraud, misrepresentation of future facts is actionable under the Consumer Fraud Act. (*Duhl*, 102 Ill. App. 3d at 495.) However, the circuit court also found that because plaintiff returned the Jetta without making any payments under the retail financing agreement she failed to allege facts to support the element of damages.

We have disposed of plaintiff's assertion that damages are unnecessary under the Consumer Fraud Act or that a presumption of damages arises from a violation of such act in identifying the elements of a cause of action for statutory fraud. However, plaintiff also asserts that the cost of retaining an attorney to protect her from the dealer's collection attempts and the inference of damages arising from deposition testimony that plaintiff stopped payment on her deposit and down-payment checks to the dealer sufficiently allege facts inferring damages. In addition, the depositions submitted also refer to plaintiff's rental of temporary transportation, which arguably gives rise to an inference of

damages as well. See *Gent v. Collinsville Volkswagen, Inc.* (1983), 116 Ill. App. 3d 496, 497.

■ Although we agree that such deposition testimony gives rise to a bare inference of damages, we find that those damages were the result of plaintiff's conduct in signing the retail order form in reliance on the alleged demo and warranty misrepresentations. Similarly, the dealer's small claims action and plaintiff's attorney fees defending it were based on the retail order form and not the retail installment contract. (See *Marvel Engineering Co. v. Matson, Driscoll & D'Amico* (1986), 150 Ill. App. 3d 787, 793; *Nalivaika v. Murphy* (1983), 120 Ill. App. 3d 773, 776 (attorney fees for defense of third-party action caused by plaintiff's tortious conduct proper as compensatory damages); see also *Sorenson v. Fio Rito* (1980), 90 Ill. App. 3d 368, 374 (attorney fees that are "nothing more than ordinary losses resulting from the defendant's conduct" are recoverable as damages).) Finally, there are no allegations or facts to support an inference that the financing rate was a material fact in plaintiff's decision to execute the retail order form. In addition, the express language of the retail installment contract describing the Jetta as used rendered plaintiff's reliance on any reference to a new-car financing rate unreasonable. (See *Belleville National Bank v. Rose*, 119 Ill. App. 3d at 59-61.) Thus, the circuit court did not err in granting partial summary judgment to the dealer regarding the alleged financing misrepresentations.

The order of the circuit court granting defendant's motion for summary judgment is affirmed in part and reversed in part. Both count I and count II of plaintiff's complaint allege four distinct misrepresentations by defendant. Specifically, we affirm that portion of the circuit court's order as it relates to defendant's alleged misrepresentations of its ability to obtain the lowest new-car financing rate and 14.25% as such rate. The order of the circuit court is reversed, and the cause is remanded for further proceedings relating to plaintiff's allegations that defendant misrepresented that the Jetta was a demo and that a 6-year/60,000-mile extended warranty was available.

Affirmed in part; reversed in part.

INGLIS, P.J., and BOWMAN, J., concur.