No. 1--94--3033

CARRIE BASS, individually, and ) Appeal from the
on behalf of all others similarly ) Circuit Court of
situated, ) Cook County.
 )
 Plaintiffs-Appellants, )
 )
 v. ) 
 ) 
PRIME CABLE OF CHICAGO, INC., )
a Delaware corporation, ) Honorable
 ) Robert D. Ericsson,
 Defendant-Appellee. ) Judge Presiding.

 JUSTICE BURKE delivered the opinion of the court:

 Plaintiff Carrie Bass appeals from an order of the circuit
court granting defendant Prime Cable of Chicago, Inc.'s motion for
summary judgment pursuant to section 2--1005 of the Illinois Code
of Civil Procedure. 735 ILCS 5/2--1005 (West 1992). On appeal,
plaintiff contends that the trial court erred in: (1) finding that
no genuine issue of material fact existed regarding certain cable
television related charges by defendant to its customers; (2)
finding that federal law preempted it from deciding that
defendant's practice of "passing through" three city-imposed
expenses to plaintiff, related to television service fees,
constituted breach of contract and violation of the Illinois
Consumer Fraud and Deceptive Business Practice Act (Consumer Fraud
Act) (815 ILCS 505/2 (West 1992)); and (3) granting summary
judgment in defendant's favor (a) with respect to plaintiff's claim
that defendant's discontinuation of a "free" cable guide
constituted breach of contract and (b) with respect to plaintiff's
Consumer Fraud Act claim regarding the "free" cable guide. 
Plaintiff's arguments concerning these three charges to defendant's
customers, of which plaintiff was one, are based on plaintiff's
contention "that these charges were, in fact, impermissible 'pass
throughs' rather than rate increases preemptively permitted by
federal law." For the reasons stated below, we affirm.
 In 1985, plaintiff Carrie Bass entered into a contract for
television cable services with Group W Cable Associates of N.W.
Chicago (Group W), defendant's predecessor in interest, which was
governed by an agreement entered into between the City of Chicago
(City) and Group W (franchise agreement). Pursuant to the
contract, Group W agreed to provide, in addition to cable service,
a monthly cable television guide at no charge. The contract did
not provide a date, time or event when it was to terminate. In
June 1990, defendant Prime Cable of Chicago, Inc. acquired Group W, 
assumed all of its cable service contracts, including the one at
issue in this case, and became governed by the franchise agreement
between the City and Group W. It was undisputed that the City is
not permitted to regulate defendant's rates under the Cable
Communications Policy Act of 1984 (47 U.S.C. 521 et seq.) because
defendant was subject to "effective competition."
 Under the franchise agreement, defendant was required to pay
the City a franchise fee of not less than 5% of defendant's annual
gross revenues pursuant to the City of Chicago Communications
Ordinance (ordinance). This franchise fee is in consideration for
the privilege of operating a cable franchise within the public ways
of the City. Until June 1991, defendant had paid the franchise fee
out of its operating revenues. In June 1991, defendant began to
pass the cost of the franchise fee directly to its cable customers
as a separate line item on its customers' bill for cable services. 
Prior to passing this cost on to its cable customers, however,
defendant, in May 1991, notified plaintiff and its other customers
by letter of the new franchise fee charge on their bill for cable
services, stating:
 "[E]ffective with your June 1991 billing, we
 will 'pass through' the franchise fee as a
 separate line item on your cable bill. If,
 for example, your cable bill is $20.00, you
 will see an additional 5% or $1.00 added to
 your bill. This $1.00 fee will be paid to the
 City and is not income to us. Your rates for
 cable television service will remain the
 same."
 In June 1991, plaintiff received a cable bill from defendant with
the 5% franchise fee charge on her bill. Plaintiff paid the bill
and thereafter continued to pay the franchise fee which appeared as
a separate line item on her monthly cable bill.

 In May 1992, defendant also notified plaintiff that the cable
guide would no longer be provided free of charge. Defendant's
notice stated:
 "[B]eginning June 1st, your cableview
 entertainment guide will be $.99 a month. 
 Unless we hear from you by May 15, 1992, May
 will be your last issue of the Cableview
 guide."
 Plaintiff did not respond to defendant's notice and, as a
consequence, defendant cancelled plaintiff's cable guide
subscription. Nonetheless, plaintiff continued to receive and pay
for cable services and, in October 1992, ordered the cable guide
for the additional charge of $.99. 
 All franchise grantees were also required to pay a further fee
to the Chicago Access Corporation (CAC), a not-for-profit
corporation created under the City's ordinance for the purpose of
promoting and developing maximum community involvement in the use
of cable access channels. The franchise agreement between the City
and defendant required that defendant pay directly to CAC an
initial capital investment plus 1% of its annual gross revenues
(not to exceed an annual cap of $1,000,000). In September 1992,
defendant began to pass this 1% charge directly to its customers. 
Prior to this time, defendant had paid the CAC fee out of its
operating revenues. Defendant provided plaintiff with written
notice of this charge in August 1992, which stated that her bill
would "begin to reflect an additional charge of $.38 per month." 
Plaintiff paid this bill and thereafter continued to pay the CAC
fee which appeared as a separate line item on her monthly cable
bill. 
 On October 6, 1992, the City of Chicago's Cable Commission
adopted a resolution which directed defendant to "cease the
itemization and collection of [the] 'CAC Assessment' until such
time as the Corporation Counsel has issued its opinion on this
matter." Defendant continued charging this fee to its customers. 
On February 9, 1993, the Commission adopted a second resolution
which rescinded the October 6, 1992, resolution.
 On April 8, 1993, plaintiff filed a six-count amended class
action complaint against defendant alleging that (1) defendant's
discontinuation of the free cable television guide and (2)
defendant's passing through of the franchise and CAC fees to
plaintiff were in breach of contract and in violation of the
Consumer Fraud Act. 
 On September 29, 1993, defendant filed a motion for summary
judgment, arguing that by including the three additional charges on
its customers bills, defendant was modifying a terminable at-will
contract and that plaintiff, by continuing to pay for and receive
cable services, ratified the modifications. The trial court
granted summary judgment in favor of defendant on all counts,
finding that no genuine issue of material fact existed, that
federal law preempted a State or local authority from prohibiting
a "pass through" charge and that the additional charges were
modifications of a "terminable at will" contract which plaintiff
ratified by continuing to pay for and receive cable service. This
appeal followed. 
 Plaintiff contends that the trial court erred in granting
summary judgment in defendant's favor because a genuine issue of
material fact existed regarding whether the billing charges for the
franchise and CAC fees were rate increases or "pass throughs" of
existing fees. More specifically, plaintiff argues that the
charges for the franchise and CAC fees did not constitute a rate
increase, "preemptively permitted by federal law" prohibiting local
restrictions on rate increases, but rather impermissible pass
through fee charges to her, which are not preempted by federal law.
Plaintiff further contends that additional questions of fact remain
regarding whether defendant continued to pass the CAC charge to its
subscribers following the Chicago Cable Commission's October 6,
1992, resolution directing defendant to cease this practice and,
"if the billing changes were found to be rate increases," whether
defendant gave plaintiff proper notice of "the purported 'rate'
increase." Defendant argues that the trial court properly found
that no genuine issue of material fact existed.
 Summary judgment shall be granted if the pleadings,
depositions and admissions on file, together with affidavits, show
that there is no genuine issue of material fact and that the moving
party is entitled to judgment as a matter of law. 735 ILCS 5/2--
1005(c)(West 1992); Maher & Associates, Inc. v. Quality Cabinets,
267 Ill. App. 3d 69, 640 N.E.2d 1000 (1994). In determining the
existence of a genuine issue of material fact, the court must
construe the pleadings, depositions, admissions, and affidavits in
a light most favorable to the nonmoving party. Purtill v. Hess,
111 Ill. 2d 229, 489 N.E.2d 867 (1986). On appeal from an order
granting summary judgment, the standard of review is de novo. USG
Corp. v. Sterling Plumbing Group, 247 Ill. App. 3d 316, 617 N.E.2d
69 (1993). 
 We agree with defendant that no genuine issue of material fact
existed. First, whether defendant's action in passing through the
franchise and CAC fees to its customers constituted rate regulation
is a question of law, not of fact, which the trial court properly
considered. Secondly, defendant admitted that it continued to pass
the CAC fee onto its subscribers following the October 6, 1992
resolution and, therefore, there is no issue of material fact.
 With respect to plaintiff's notice argument, defendant argues
that plaintiff has waived this issue on appeal because she failed
to raise it in the trial court. In response, plaintiff asserts
that this issue is not waived, and refers this court to specific
pages of the transcript of the hearing on defendant's motion for
summary judgment on August 12, 1994. Plaintiff argued therein,
based on her position that the franchise and CAC charges were pass
through charges, rather than rate increases, as follows:

 "And if they wanted to raise their rates,
 they needed to take certain steps which would
 include a notification to the Chicago Cable
 Commission as well as to the customers that
 they were going to raise their rate.
 ***
 They didn't raise their rates as they now
 contend ***. They passed the charges through. 
 While they had the ability, upon following
 proper guidelines and procedures to raise
 their rates, and that's what they are
 effectively arguing they could have done, they
 didn't do that. They passed the charges
 through.
 ***
 *** So they can't say that they raised
 their rates because (1) they didn't follow
 proper procedures and (2) they themselves in
 1991 said it wasn't a rate increase.
 ***
 Well, it wasn't a rate increase, and even
 if it was, your Honor, they didn't follow the
 proper procedures that they admit in their
 reply brief they had to follow, which was to
 simply send out notice of that rate increase. 
 They didn't send out notice of that rate
 increase." (Emphasis added.)
 In a footnote in plaintiff's reply brief on appeal, she states that
"notice of an unauthorized pass through is irrelevant in any
event." Accordingly, plaintiff's argument in the trial court was
that defendant failed to notify plaintiff and the other subscribers
that the "new" charges were a rate increase. Plaintiff clearly did
not argue the inadequacy of the actual pass through notices sent by
defendant. Thus, plaintiff's argument on appeal, that the "pass
through" notices sent by defendant "to its subscribers concerning
the nature and purpose for the billing changes was vague at best,
and deliberately misleading at worst" and "blam[ed] the billing
increase on the City and the CAC," clearly is not the same argument
she raised in the trial court. We find, therefore, that plaintiff
has waived this argument by failing to raise it at trial. U.S.
Fidelity and Guaranty Co. v. Specialty Coatings Co., 180 Ill. App.
3d 378, 535 N.E.2d 1071. Notwithstanding plaintiff's waiver, we
briefly note that it is undisputed that defendant's notices
explained the billing changes, i.e., that the charges represented
expenses previously paid by defendant to the City and CAC, which it
was passing on to its subscribers.
 Plaintiff next contends that the trial court erred in granting
summary judgment in defendant's favor with respect to plaintiff's
claim that defendant's action in passing through the franchise and
CAC fees to plaintiff constituted breach of contract and violation
of the Consumer Fraud Act based on the court's determination that
federal law preempts State and local authorities from controlling
pass through charges. Defendant argues that any prohibition of
pass throughs would constitute a form of rate regulation preempted
by federal law. 
 In determining whether a federal law preempts a State
regulation, a court should "ascertain Congress' intent in enacting
the federal statute at issue." Cable Television Association v.
Finneran, 954 F.2d 91, 95 (2d Cir. 1992). Where it appears that
Congress intended exclusive federal regulation of the area in
question, then the State law cannot stand. Absent such an intent,
the State rule will fall only if it actually conflicts with the
federal statute. Finneran, 954 F.2d at 95; see also 47 U.S.C.
556(c) (1991). Under the doctrine of preemption, State law
includes legal duties imposed by the common law. CSX
Transportation v. Easterwood, 507 U.S. 658, 123 L. Ed. 2d 387, 113
S. Ct. 1732 (1993). 
 The federal Cable Communications Policy Act of 1984 (Cable
Act), which specifically preempts rate regulation by State and
local authorities, provides:
 "Any *** State may not regulate the rates for
 the provision of cable service except to the
 extent provided for under this section." 
 (Emphasis added.) 47 U.S.C. 543(a) (1991).
 Section 543 of the Cable Act grants to local franchising
authorities the power to regulate the rates in circumstances "in
which the cable system is not subject to effective competition." 
47 U.S.C. 543(b)(1) (1991). "Rate regulation" within the context
of the Cable Act includes a State cable regulatory agency's
restriction on the pass through of expenses. Westmarc
Communications, Inc. v. Connecticut Department of Public Utility
Control, 807 F.Supp. 876, 884-89 (D. Conn. 1990). 
 In Westmarc, the court held that the Cable Act preempted a
State cable regulatory agency from imposing a restriction on the
pass through of a fine incurred by the cable company for its
negligent failure to renew an operating permit. The Westmarc court
concluded that the pass through restrictions sought to be imposed
by the agency were in substance a "trapping" of costs on the
shareholders of the cable company so that they would not be passed
on to the customers. According to the Westmarc court, this is
exactly the type of rate regulation which Congress sought to
preempt in enacting the preemptive provisions of the Cable Act.
Westmarc, 807 F.Supp at 876; see also Mobile Oil v. Dubno, 492
F.Supp. 1004 (D. Conn. 1980), aff'd in part and dismissed in part,
639 F.2d 919 (2nd Cir.) (holding that a State law prohibiting a
pass through of a gasoline tax to customers was preempted by
federal law).
 Here, plaintiff essentially is asking this court to place a
restriction on the pass through of fees imposed by the City of
Chicago. Like the fees at issue in Westmarc, the fees here have
been imposed on defendant in order to assist in the regulation of
the local cable industry. A holding in plaintiff's favor would be
tantamount to the City passing a law which forbids cable companies
from passing through city-imposed fees to customers--a law which
the Westmarc court specifically held as preempted by federal
legislation.
 Plaintiff attempts to distinguish the facts of her case from
Westmarc, arguing that the Westmarc court recognized preemption
only in the regulation of newly imposed charges and not, as is the
case here, on charges that defendant has been obligated to pay
since 1985. Plaintiff maintains that she has already paid the
franchise and CAC fees as part of the cable rate calculated by
defendant. Plaintiff also notes that section 542 of the Cable Act
permits a pass through charge for rate increases, mandates a pass
through for rate decreases and is silent regarding a pass through
for already existing fees. 47 U.S.C. 542. Therefore, plaintiff
argues that a prohibition of a pass through charge of existing fees
would not conflict with the Cable Act. 
 We find plaintiff's argument unpersuasive. Plaintiff has
failed to make any allegation in her amended complaint that she has
been "double-billed" for these charges. In fact, paragraph 17 of
plaintiff's amended complaint states that defendant had never
charged her for these fees prior to 1991, when these charges first
appeared on plaintiff's bills. Further, plaintiff's reliance on
section 542 is misplaced since that section applies only to those
cable operators whose rates are regulated; defendant is not a rate-
regulated operator. 
 During oral argument, plaintiff provided another "distinction"
of the Westmarc decision. According to plaintiff, Westmarc was
limited to restrictions on the pass through of fines, and since the
case at bar concerns a restriction on the pass through of fees,
Westmarc is not controlling in the case at bar. Plaintiff's
distinction is contrary to the reasoning employed by the Westmarc
court. The Westmarc court stated that its decision was not limited
to restrictions on the pass through of "negligently incurred
costs." Westmarc, 807 F.Supp at 888. 
 Plaintiff also argues that the holding in Westmarc was
abandoned by the Second Circuit Court of Appeals in Finneran. We
note that the Finneran court, without citing Westmarc, held that a
local cable regulator was not preempted by federal law from
limiting "downgrade" charges imposed by cable companies. Downgrade
charges are charges imposed on cable customers who elect to move
from a higher priced level of cable service to a lower priced level
of cable service. The Finneran court strictly construed the
preemption provision of the Cable Act, which provides that a "State
may not regulate the rates for the provision of cable service." 
(Emphasis added.) 47 U.S.C. 543(a) (1991). The Finneran court
reasoned that there is no direct conflict with federal law because
the State is not regulating rates "for the provision of" cable
services.
 Unlike the charges in Finneran which were not "for the
provision of" cable services, the pass through charges at issue in
the present case were "for the provision of" cable services. In
order for cable customers to receive cable services, they had to
pay the franchise fee and the CAC fee. Thus, these charges fall
within the scope of the Cable Act's preemption provision because
the charges were paid in exchange for cable service provided by
defendant. 
 Plaintiff further argues, citing dicta from Time Warner
Entertainment Co. v. FCC, 56 F.3d 151 (D.C. Cir. 1995), that the
Cable Act was not meant to preempt the litigation of claims based
on State consumer protection laws, so long as the laws do not "run
afoul" of the federal prohibition against rate regulation. Because
the Time Warner court was not faced with the issue of whether pass
through restrictions were preempted by State law, Time Warner lends
no support to plaintiff's argument here. Furthermore, as discussed
above, the enforcement of plaintiff's claims would "run afoul" of
the preemption provisions of the Cable Act.
 Plaintiff also contends that the trial court erred in finding
that the Cable Act permits pass through charges based on the
court's determination that defendant acted "consistent with the
1984 Cable Act and case law," as well as the fact that the "Chicago
Ordinance and the Franchise Agreement are silent as to 'pass
through' charges" and, "so long as notice was made to the parties,
as it was in this case, the 'pass through' of the fees was valid." 
Because we hold that plaintiff's claims based on the pass through
of city-imposed fees are preempted by federal law, we need not
address this issue. The order of the trial court granting summary
judgment to defendant on all counts relating to the pass through of
the franchise and CAC fees is therefore affirmed. 
 Plaintiff next contends that the trial court erred in granting
summary judgment in defendant's favor with respect to her claim
that defendant's discontinuance of the "free" cable guide
constituted a breach of contract based on the trial court's
determination that defendant's decision to begin charging for the
monthly cable guide was a modification of a "terminable at will"
contract which plaintiff ratified by continuing to pay for and to
receive cable services. Alternatively, plaintiff maintains that
even if defendant's decision to charge for the cable guide was a
contract modification, the modification was invalid because it was
not supported by consideration. 
 Defendant contends that the trial court properly granted
summary judgment on this issue because defendant's actions
constituted a valid contract modification which plaintiff ratified
by paying for and receiving defendant's services. 
 A contract without a specified duration is terminable at will
by either party. Alderman Drugs, Inc. v. Metropolitan Insurance
Co., 161 Ill. App. 3d 783, 515 N.E.2d 689 (1987). A terminable at
will contract may be unilaterally modified. Garber v. Harris Trust
& Savings Bank, 104 Ill. App. 3d 675, 432 N.E.2d 1309 (1982)
(holding that a credit issuing bank did not breach a credit
agreement when it unilaterally modified the terms); see also
Langendorf v. Irving Trust Co., 244 Ill. App. 3d 70, 614 N.E.2d 23
(1992) (extending Garber beyond credit card cases). A contract
modification must satisfy all of the requirements of a valid
contract, including the requirement of consideration. American
Hospital Supply Corp. v. Hospital Products, Ltd., 780 F.2d 589 (7th
Cir. 1986). A party to a terminable at will contract provides
consideration for a contract modification by providing services
which it is not obligated to provide in the future. Garber, 104
Ill. App. 3d at 683. 
 Here, the contract between plaintiff and defendant is
terminable at will because the contract does not provide for a
cancellation date or event. Therefore, defendant was under no duty
to provide cable services after the end of each billing period. 
When defendant modified the terms of the contract by discontinuing
the "free" cable guide, its continued provision of cable services
constituted sufficient consideration because it undertook to
perform a duty under the new terms which it previously was not
obligated to perform. Garber, 104 Ill. App. 3d at 683.
 We briefly note that plaintiff's argument that Garber should
be limited to contracts regarding credit cards is without merit. 
Plaintiff overlooks this court's decision in Langendorf, which
recognized that Garber "did not limit its holding to credit card
cases." Langendorf, 244 Ill. App. 3d at 79. 
 Plaintiff also contends that the trial court erred in
concluding that plaintiff voluntarily ratified the contract
modifications by paying for and continuing to use the cable
service, and, therefore, that plaintiff waived her contractual
rights. Because we hold that the contract modification was
supported by sufficient consideration, we need not address this
issue. We therefore hold that summary judgment in defendant's
favor was proper with respect to plaintiff's breach of contract
claim regarding defendant's discontinuation of the "free" cable
guide. 
 Lastly, plaintiff contends that the trial court erred in
granting summary judgment in defendant's favor with respect to her
consumer fraud claims that defendant acted unfairly or deceptively
by requiring her to pay the franchise and CAC fees and in
discontinuing the "free" cable guide. Defendant counters that
plaintiff failed to allege facts showing that defendant acted
unfairly or deceptively and that plaintiff failed to meet the
necessary "materiality" element of a Consumer Fraud Act cause of
action. 
 In order to state a cause of action under the Consumer Fraud
Act, "a plaintiff must allege: (1) a statement by the seller; (2)
of an existing or future material fact; (3) that was untrue,
without regard to the defendant's knowledge or lack thereof of such
untruth; (4) made for the purpose of inducing reliance; (5) on
which the victim relied; and (6) which resulted in damages to the
victim." Duran v. Leslie Oldsmobile, Inc., 229 Ill. App. 3d 1032,
1041, 594 N.E.2d 1355 (1992). 
 In Lehrman v. South Chicago Cable, Inc., 210 Ill. App. 3d 346,
352, 569 N.E.2d 99 (1991), the plaintiff sued the defendant cable
company under the Consumer Fraud Act alleging damages arising from
the defendant's statement that the charge for two additional cable
outlets would be free. While the installation of the two
additional cable outlets was provided at no additional charge, the
defendant began to charge the plaintiff for the use of converters
at each outlet. The Lehrman court held that no question of
material fact existed as to the materiality requirement of the
Consumer Fraud Act because the plaintiff continued to receive the
cable service in the new additional outlets after learning about
the converter charge and, therefore, summary judgment was proper. 
Lehrman, 210 Ill. App. 3d 346.
 As in Lehrman, plaintiff in the present case has failed to
present a genuine issue of material fact with respect to the
alleged misrepresentation of a material fact by defendant. After
learning that the cable guide would no longer be provided free of
charge, plaintiff continued to use defendant's cable service. 
Subsequently, plaintiff even ordered the cable guide, agreeing to
pay the new charge of $.99. These facts illustrate that there was
no genuine issue of material fact with respect to the Consumer
Fraud Act requirement of a material misleading fact. With respect
to the franchise and CAC fees, defendant also notified plaintiff of
both before plaintiff was required to pay these charges. 
Accordingly, summary judgment was proper on this issue.
 We briefly note that plaintiff attempts to distinguish Lehrman
on the ground that the notices in Lehrman were not materially
misleading because the defendant cable company, being "true to its
notices," continued to provide free services to the additional
outlets. This alleged distinction overlooks the principal fact
upon which the Lehrman court relied, i.e., that the plaintiff
continued to use the cable services with full knowledge of the
converter charge. Similarly, in the case at bar, plaintiff
continued to use the cable services with full knowledge of the
additional franchise and CAC charges, as well as the cable guide
charge which she subsequently subscribed to at the new charge. 
 Plaintiff also argues that summary judgment was improper
because defendant did not provide plaintiff with the requisite
notice under the Consumer Fraud Act. As discussed above, plaintiff
waived this issue. We briefly note, and concur with, the trial
court's determination that defendant met the notice requirements
related to the pass through of the franchise and CAC fees under
federal law. 
 Affirmed.
 HARTMAN, P.J., and DiVITO, J., concur.