Darrell THACKER and Sharon Thacker, Plaintiffs–Appellants,

v.

MENARD, INC., Defendant/Third–Party Plaintiff–Appellee,

v.

NATIONAL PLAN SERVICE, INC., Third–Party Defendant–Appellee.

No. 96–2651.

United States Court of Appeals, Seventh Circuit.

Submitted July 16, 1996*.

Decided Jan. 28, 1997.

---

* This successive appeal has been submitted to the original panel under Operating Procedure 6(b). After examination of the briefs and the record, and in light of the oral argument that took place on February 15, 1996 in *Thacker v. Menard, Inc.*, No. 95–2978, 1996 WL 267456 (decided by unpublished order May 13, 1996), we have concluded that additional oral argument is unnecessary. Accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App. P. 34(a).

Harlan Heller (submitted), David Stevens, Heller, Holmes & Associates, Mattoon, IL, for plaintiffs–appellants.

Robert H. Shultz, William J. Becker, Robert D. Rowland, Heyl, Royster, Voelker & Allen, Edwardsville, IL, Karen L. Kendall, Craig L. Unrath, Heyl, Royster, Voelker & Allen, Peoria, IL, for defendant/third–party plaintiff–appellee.

Before KANNE, ROVNER, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

When a deal seems too good to be true, it probably is. Darrell and Sharon Thacker learned this lesson when they purchased materials to build a vacation home from Menard, Inc. ("Menards"), at a price that was "dirt cheap compared to the regular lumberyards." The sales personnel at Menards assured the Thackers repeatedly that the materials were all they needed to build the house, with the exception of six or seven items, but this turned out not to be the case. Instead, when all was said and done, the Thackers wound up spending more than ten times the original price quoted by Menards to complete the home. They responded by suing Menards in diversity, but this effort also failed when the district court granted summary judgment for Menards. We agree that summary judgment was proper on the Thackers' contract-based theories, but we conclude that they presented enough to survive summary judgment on their claim based on the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("Consumer Fraud Act"). We therefore reverse and remand for further proceedings.

## I

The Thackers began their project by obtaining a large book from National Plan Service, Inc., that contained a plan for a Vacation A–Frame Home LakePoint, which included blueprints with all the specifications for building the house. Book in hand, they went to Menards on May 17, 1992, to shop for the necessary materials. Once there, they spoke to Mark Rhinehart, one of the salesmen on duty that day, and they asked him how much it would cost them to purchase what they needed to build the house. Rhinehart looked at the book, found the plan number, and entered it into the store's computer, which then generated a six-page estimate of what was needed and how much it would cost. Each page of the estimate contained the following disclaimer:

This is an estimate. It is given only for general price information. This is not an offer and there can be no legally binding contract between the parties based upon this estimate. The prices stated herein are subject to change depending upon market conditions. The prices stated on this estimate are not firm for any time period unless specifically written otherwise on this form. The availability of materials is subject to inventory conditions. MENARDS IS NOT RESPONSIBLE FOR ANY LOSS INCURRED BY THE CUSTOMER WHO RELIES ON PRICES SET FORTH HEREIN OR ON THE

AVAILABILITY OF ANY OF THE MATERIALS STATED HEREIN. All information on this form, other than price, has been provided by customer and Menards is not responsible for any errors in the information on this estimate, including but not limited to quantity, dimension and quality. Please examine this estimate carefully. MENARDS MAKES NO REPRESENTATIONS, ORAL, WRITTEN OR OTHERWISE THAT THE MATERIALS LISTED ARE SUITABLE FOR ANY PURPOSE BEING CONSIDERED BY THE CUSTOMER. BECAUSE OF WIDE VARIATIONS IN CODES, THERE ARE NO REPRESENTATIONS THAT THE MATERIALS LISTED HEREIN MEET YOUR CODE REQUIREMENTS.

The Thackers did not read this language, either when the estimate was generated or at any time prior to agreeing to purchase the materials. It was relatively inconspicuous, appearing on the form in type approximately one-half the size of the type on the remainder of the form. The bottomline price on the estimate was $13,151.87.

This estimate was significantly lower than the two estimates the Thackers had already received. Rhinehart assured them, however, that the estimate contained all the materials they would need (with the exceptions not at issue here). When the Thackers, suspicious of the low price, interrogated him for a half-hour, Rhinehart explained the price on the basis of Menards' high volume method of doing business. The Thackers went home, thought about matters for a week, and returned to Menards on Sunday, May 24th. At that time, they discussed the estimate with employee John Melbrech, who also assured them that the package was complete. Again, the Thackers went home, and again they returned on May 31, 1992. During this third consultation, Mr. Thacker sought and received the same assurances from Rhinehart. At the end of the conversation on the 31st, the Thackers placed their order for the materials listed on the estimate.

When the materials were delivered to the Thackers' construction site in Robinson, Illinois, they learned that Menards' high volume

was not the only reason for the low estimate. The list, despite Rhinehart's and Melbrech's assurances, was incomplete, in that it omitted items like the two-by-twelve beams necessary to build the center of the house and some of the fixed glass windows called for in the plans. In the end, the Thackers claimed that they had to spend $147,398.40—more than ten times the original $13,151.87 bid—trying to build the home (excluding the construction of the foundation, floor coverings, plumbing, heating and electric wiring, which the Thackers were handling separately).

To recoup the additional monies, the Thackers brought a five-count complaint against Menards (a citizen of Wisconsin for diversity jurisdiction purposes) in federal district court. They alleged breach of contract, promissory estoppel, breach of express warranty, breach of warranty for a particular purpose, and violation of the Consumer Fraud Act. Menards then brought a third-party complaint against National Plan Service, Inc., for indemnification in the event it was found liable to the Thackers. Since the Thackers alleged damages in excess of $50,000, their claims nominally satisfied the requirements of diversity jurisdiction. We note, however, that it remains unclear how, through the purchase of additional supplies and the alteration of their construction plans, the Thackers suffered this level of damages. Nevertheless, we cannot say at this juncture that it appears "to a legal certainty" that the jurisdictional amount of 28 U.S.C. § 1332(a) cannot be satisfied. *See St. Paul Indemnity Co. v. Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). *See also Wellness Community–National v. Wellness House*, 70 F.3d 46 (7th Cir.1995). It is also worth remarking that the Thackers may have costs assessed against them if they ultimately recover less than $50,000 after adjudication on the merits. See 28 U.S.C. § 1332(b).

As it turned out, the case was short-lived, because the district court granted summary judgment in favor of Menards on July 24, 1995. The court found that the express disclaimer printed on the estimate defeated the Thackers' effort to prove a written contract between themselves and Menards and that it

precluded any express or implied warranty. Furthermore, the court rejected the Thackers' argument that an oral contract arose through the conversations of the two salesmen with them, looking again to the printed disclaimer on the estimate form. With respect to the Consumer Fraud Act claim, the court acknowledged that lack of intent on Menards' part did not preclude a claim, but it found that the salesmen's statements were merely "opinions," and thus not actionable. The Thackers appealed from the entry of that order, but in *Thacker v. Menard, Inc.*, No. 95–2978, 1996 WL 267456 (7th Cir., decided May 13, 1996), this Court dismissed the appeal for lack of jurisdiction, because the third-party claim against National Plan Service had never been dismissed. By order of June 18, 1996, the district dismissed all claims against National Plan Service, and the Thackers again appealed to this Court from the final judgment in the case.

## II

### A. The Contract Claims

In our de novo review of the district court's grant of summary judgment, we take the facts in the light most favorable to the Thackers. *Geier v. Medtronic, Inc.*, 99 F.3d 238, 240 (7th Cir.1996). Nevertheless, on the record before the district court, we have little trouble concluding that the court correctly dismissed the claims asserting both contract rights and promissory estoppel. These allegations all centered on one essential question: did Menards, either orally or in writing, warrant that everything the Thackers needed to build their house was listed on the estimate? To answer this question, we look first to Illinois' version of Uniform Commercial Code § 2–313, 810 ILCS § 5/2–313, which governs the creation of express warranties. Section 2–313 provides in pertinent part that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS § 5/2–313(a).

The Thackers insist that the oral assurances they received from Menards' employees either became part of the written contract, or were included in some kind of oral contract that formed the actual basis of their bargain with Menards. We take the two possibilities in turn. First, there is no document that embodies a written contract apart from the estimate itself. Far from implying that oral assurances could become incorporated in the agreement, the estimate clearly disclaimed any warranty that the materials were fit for any purpose. Nothing in the record indicates that both Menards and the Thackers intended to make the employee assurances part of the bargain, yet such an indication would be essential to show that they were. *See, e.g., Adolphson v. Gardner–Denver Co.*, 196 Ill.App.3d 396, 143 Ill.Dec. 86, 91, 553 N.E.2d 793, 798 (1990). The Thackers fare no better on their argument that there was really just an oral agreement between themselves and Menards, which included the salesmen's statements as additional warranties. Assuming for the sake of argument that there was such an oral contract, the majority of its terms could be ascertained only by reference back to the written estimate, which would have been incorporated into it. The Thackers make no allegation that there was an oral deal for every piece of lumber and every nail, at a particular price, in the absence of the estimate. But once we incorporate the written estimate into the oral agreement, its disclaimer springs back into the picture. Either way, the estimate, complete with its disclaimer, set the terms of the deal. Under the circumstances, the Thackers could not reasonably expect to rely on oral representations about the estimate that contradicted the express written terms of the document. *See Luria Bros. & Co., Inc. v. Pielet Bros. Scrap Iron & Metal, Inc.*, 600 F.2d 103, 111 (7th Cir.1979). We therefore agree with the district court that any contract that existed between the Thackers and Menards did not contain a promise that the materials would be sufficient to build the house, it did not contain either an express warranty or a warranty for a particular purpose to that effect, and principles of promissory estoppel do not bind Menards to such a term. These claims were properly dismissed.

## B. The Consumer Fraud Act Claim

■ The Consumer Fraud Act claim is another matter. Illinois courts have repeatedly stressed the "broad protective philosophy" of this legislation. *See American Buyers Club of Mt. Vernon, Illinois, Inc. v. Honecker*, 46 Ill.App.3d 252, 5 Ill.Dec. 666, 669, 361 N.E.2d 1370, 1373 (1977); *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill.App.3d 1032, 171 Ill.Dec. 835, 841, 594 N.E.2d 1355, 1361 (1992); *Perona v. Volkswagen of America, Inc.*, 276 Ill.App.3d 609, 213 Ill.Dec. 328, 331, 658 N.E.2d 1349, 1352 (1995). In order to state a claim under the Act, the plaintiff must show "(1) a deceptive act or practice; (2) an intent by the defendant that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving a trade or commerce." *Perona*, 213 Ill.Dec. at 331, 658 N.E.2d at 1352. *See also Siegel v. Levy Organization Development Co., Inc.*, 153 Ill.2d 534, 180 Ill.Dec. 300, 304, 607 N.E.2d 194, 198 (1992); *Tibor Machine Products, Inc. v. Freudenberg–Nok General Partnership*, 942 F.Supp. 1165, 1172 (N.D.Ill.1996). The Act eliminated the common law fraud requirement of scienter, and it is not necessary to prove actual reliance on the deception.

■ The district court appears to have focused exclusively on the written estimate in finding that Menards had not misrepresented any facts to the Thackers, noting that an "estimate" is by its very nature an opinion. In addition, it might have regarded the salesmen's statements as opinion or "puffing," not as statements of fact that were deceptive. If these were mere opinions or "puffing," then they would not be actionable under the Consumer Fraud Act. *See, e.g., Totz v. Continental Du Page Acura*, 236 Ill.App.3d 891, 177 Ill.Dec. 202, 211, 602 N.E.2d 1374, 1383 (1992). The Totz court recognized, however, that the question "[w]hether a representation will be considered a statement of opinion or a factual representation may depend upon the circumstances of the case." *Id.* Opinions or ambiguous statements by the salesperson may be considered as factual representations if it would be reasonable for the other party to treat it as such.

■ The statements that Menards, through its salesmen, made here were specific in nature: effectively, the message was that the materials listed on this form will suffice to build the A-frame house described in the plan you have shown us, and which already exists in our computers. This was not a general commendation of the goods, like the one in *Adolphson*, 143 Ill.Dec. at 91, 553 N.E.2d at 798, or a comment that they were of "good quality" and the buyer would be pleased with them, as in *Olin Mathieson Chemical Corp. v. Moushon*, 93 Ill.App.2d 280, 281, 235 N.E.2d 263, 264 (1968). Instead, the Thackers' evidence shows that it was a specific representation that the particular listed items on the designated plan were all included. This was enough to raise a genuine issue of fact on the existence of a deception. The reasonableness of the Thackers' interpretation of the salesmen's statements as representations (instead of mere opinions) is also a genuinely disputed fact: they went to Menards for three weeks in a row and exhaustively questioned the salesmen before going forward with their purchase. The salesmen repeatedly told them that the package included everything they needed, and they attempted to explain the differential between Menards' price and that of the other lumberyards the Thackers had visited. A trier of fact could find that, despite the fact that the Thackers had access to the full list themselves, they were reasonable to regard the statements of Menards' employees as factual representations.

We therefore AFFIRM the district court's judgment for Menards on Counts I through IV of the complaint, and we REVERSE and REMAND for further proceedings on Count V's Consumer Fraud Act allegations. We also VACATE the district court's order dismissing National Plan Service from the case, so that it may reconsider this order in light of our disposition of the principal claims here. Each side is to bear its own costs on appeal.