B. SANFIELD, INC., Plaintiff–Appellant,

v.

FINLAY FINE JEWELRY CORP., Defendant–Appellee.

No. 98–1873.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1998.

Decided Feb. 17, 1999.

Brian D. Shore (argued), Guyer & Enichen, Erik K. Jacobs, Kostantacos, Traum, Reuterfors, & McWilliams, Rockford, IL, for Plaintiff–Appellant.

Diane Green Smith (argued), Mayer, Brown & Platt, Chicago, IL, for Defendant–Appellee.

Jacqueline M. Zydeck, Office of Attorney General, Civil Appeals Division, Chicago, IL, for Amicus Curiae.

Before COFFEY, ROVNER, and EVANS, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

B. Sanfield, Incorporated, and Finlay Fine Jewelry Corporation both purvey fine jewelry to the public in Rockford, Illinois. Sanfield filed suit against Finlay alleging that Finlay's practice of advertising its jewelry at discounts of 40 to 60 percent off the regular price constitutes deceptive advertising under section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and section 43(a) the Lanham Act, 15 U.S.C. § 1125(a), because the "regular" price is, for practical purposes, a fiction. *See F.T.C. v. Colgate–Palmolive Co.*, 380 U.S. 374, 387, 85 S.Ct. 1035, 1044, 13 L.Ed.2d 904 (1965). After conducting a trial, the district court found in favor of Finlay, reasoning that Finlay's advertisements were not deceptive. *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 999 F.Supp. 1102 (N.D.Ill.1998). Because the court failed to consider the pertinent state and federal regulations in making that assessment, however, we vacate the judgment and remand for further consideration.

## I.

Sanfield is a locally-owned retailer. At its one and only store in Rockford, it offers jewelry, floral arrangements, plants, and other gifts for sale to the public. Finlay is a nationwide retailer that also sells jewelry to the public. It does so through fine jewelry departments that it leases from host department stores such as Bergner's, which has thirteen stores in Illinois, including two in Rockford.

Among other items, Sanfield and Finlay each sell gold earrings, gold chains, gold bangles, and gold charms; and this suit centers upon Finlay's efforts to advertise and promote the sale of those four categories of jewelry. Although Finlay prices these items in the first instance at about 5.5 times their cost, it frequently offers them for sale at 40 to 60 percent off the original price, with 50 percent being the most common discount. In fact, Finlay sells the vast majority of these types of jewelry in Rockford at the discounted, rather than the original price. *See* R. 183 Ex. 77 ¶¶ 9, 10.

The premise of Sanfield's suit is that the "regular" price that Finley sets for its gold earrings, chains, bangles, and charms is a sham. Finlay sets the original price high, Sanfield alleges, with no expectation that it will make substantial sales at that price. The truly regular price is, in practice, the discounted price. Yet, Sanfield emphasizes, although reduced, even the discounted price of a given piece of Finlay jewelry may in fact be substantially higher than the regular, non-discounted price at which other retailers, including Sanfield, customarily offer that same item. Rational consumers who take the time to price shop would, of course, opt to buy the jewelry at the regular prices offered by the other retailers. Sanfield believes, however, that "50 percent off" has such an alluring ring that many consumers are misled into thinking that Finlay's sale prices are really better than the non-discounted prices at which Sanfield offers its own jewelry. As a result, customers are enticed away from Sanfield.

Consistent with Sanfield's theory, state and federal regulations (which we will set out in full below) both recognize the possibility that the advertising and promotion of discount prices can be deceptive. Like a number of other states, Illinois has adopted a regulation which provides that it is deceptive for a seller to compare the discounted price of an item with the regular price, unless the seller has either (1) sold a substantial number of that item at a price equal to or greater than the regular price or (2) has offered the item openly and actively at the regular price for a reasonably substantial time in good faith with the genuine intent of selling the item at that price. 14 Ill. Admin. Code § 470.220; *see generally* Alan M. Komensky & Mark D. Wegener, *When is a Sale Not a Sale? State Regulation of Price Comparison Advertising*, 5 ANTITRUST 28 (Summer 1991). The federal counterpart likewise recognizes the deceptive potential of advertising a reduction in a product's former price when the former price is fictitious; and it poses a similar question for the purpose of assessing whether the regular price is bona fide—has the seller in good faith offered the item at the regular price openly and actively for a

reasonably substantial period of time in the regular, recent course of its business? 16 C.F.R. § 233.1.

The district court did not consider either of these regulations in finding that Finlay's advertising is not deceptive. The district court found, at the outset of its analysis, that Finlay prices its jewelry with its gross margin goals foremost in mind: the company sets both a regular and discount price for each item simultaneously, and those prices are calculated to ensure that when the item is sold at a 50 percent discount, it still will yield the desired gross margin. 999 F.Supp. at 1105. Consistent with that focus, Finlay's sales records revealed only whether or not a given store was meeting its gross margin goals, not the number of items sold at the discounted versus the regular price. *Id.* The court was not disturbed, however, by the possibility that the "regular" price in this scenario might serve as little more than a benchmark for the "50 percent off" discounts at which the jewelry will typically be sold. "There is nothing inherent in the term 'regular price,'" the court explained, "that suggests that defendant either sells those jewelry items at that price or that it offers them at that price for any particular period of time." *Id.* The court therefore rejected the notion that Finlay's advertisements and promotions might be deceptive per se to the extent that Finlay does not sell, or does not genuinely attempt to sell, its products at the putative "regular" prices. *Id.* Only if there were proof that consumers actually believe that Finlay regularly and in good faith offered its jewelry for sale at the regular price could one conclude that Finlay's advertising and promotional practices are deceptive, the court reasoned. *Id.* Sanfield offered some evidence on that score (as did Finlay), but the court found it insufficient to show that

consumers were actually misled. *Id.* at 1105–08. Consequently, the court found that Sanfield had not carried its burden in establishing the first element of its claim under the Illinois consumer fraud statute—that Finlay had engaged in a deceptive act or practice (*id.* at 1107–08)—and the first and second elements of its Lanham Act claim—that Finlay had issued false or misleading advertisements which are actually deceiving or likely to deceive (*id.* at 1108–09). Having so concluded, the court believed it unnecessary to consider whether Finlay's ads comported with the state and federal regulations. *Id.* at 1108 n. 9.

**II.**

**A.**

■ The thrust of Sanfield's appeal is that the district court erred when it found Finlay's advertisements and promotions not to be deceptive without considering what the state and federal regulations have to say on that subject. Sanfield is joined in that argument by the Illinois Attorney General, who has filed a brief as a friend of the court. As this argument challenges the legal principles that the court applied to the facts, our review is de novo. *E.g., Kidd v. Illinois State Police,* 167 F.3d 1084, 1094–1095 (7th Cir.1999).

■■ To make a case under the Illinois act,[1] the plaintiff must prove that the defendant (1) engaged in a deceptive act or practice, (2) with the intent that a party (including the consumer) rely on the deception, (3) while engaged in trade or commerce. *E.g., Zekman v. Direct American Marketers, Inc.,* 182 Ill.2d 359, 231 Ill.Dec. 80, 695 N.E.2d 853, 860 (1998); *Siegel v. Levy Org. Dev. Co.,*

---

1. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act provides:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive

Trade Practices Act", approved August 5, 1965 [815 ILCS 510/2. ], in the conduct of any trade or commerce are hereby declared unlawful whether any person ·has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a) of the Federal Trade Commission Act [15 U.S.C. § 45].

815 ILCS 505/2.

153 Ill.2d 534, 180 Ill.Dec. 300, 607 N.E.2d 194, 198 (1992). The statute does not require proof of actual reliance, *id.*; *see also, e.g., Peter J. Hartmann Co. v. Capital Bank & Trust Co.*, 296 Ill.App.3d 593, 230 Ill.Dec. 830, 694 N.E.2d 1108, 1116–17 (1998); *Garcia v. Overland Bond & Inv. Co.*, 282 Ill.App.3d 486, 218 Ill.Dec. 36, 668 N.E.2d 199, 203 (1996), nor proof that anyone was actually deceived or damaged, 815 ILCS 505/2; *but see infra* at 15–16. In the realm of advertising, it is enough that the challenged advertisement " 'creates the likelihood of deception or has the capacity to deceive.' " *Garcia*, 218 Ill.Dec. 36, 668 N.E.2d at 203, quoting *People ex rel. Hartigan v. Knecht Servs., Inc.*, 216 Ill.App.3d 843, 159 Ill.Dec. 318, 575 N.E.2d 1378, 1387 (1991).

Exercising the regulatory authority granted him by the consumer fraud act, 815 ILCS 505/4, the Illinois Attorney General has determined that "[t]he use of misleading price comparisons is injurious to both the consuming public and competitors and is an unfair or deceptive act and an unfair method of competition under Section 2 of the Consumer Fraud and Deceptive Practices Act ...." 14 Ill. Admin. Code § 470.110. The following regulation identifies the circumstances under which a seller's comparison of a discounted price to its own regular price amounts to a deceptive act for purposes of the statute:

It is an unfair or deceptive act for a seller to compare current price with its former (regular) price for any product or service, (for example: "$99, now $69, Save $30"; "regularly $99, Now $69"; "Originally $99, Now $69"; "Save $30, Now $69") unless one of the following criteria are [sic] met:

(a) the former (regular) price is equal to or below the price(s) at which the seller made a substantial number of sales of such products in the recent regular course of its business; or

(b) the former (regular) price is equal to or below the price(s) at which the seller offered the product for a reasonably substantial period of time in the recent regular course of its business, openly and actively and in good faith, with an intent to sell the product at that price(s).

14 Ill. Admin. Code § 470.220. This regulation has the force of law in Illinois. *See* 815 ILCS 505/4.

■ Under the federal Lanham Act, which generally proscribes the false description of goods and their origins,[2] the plaintiff must show that the defendant (1) made a false or misleading statement, (2) that actually deceives or is likely to deceive a substantial segment of the advertisement's audience, (3) on a subject material to the decision to purchase the goods, (4) touting goods entering interstate commerce, (5) and that results in actual or probable injury to the plaintiff. *See Grove Fresh Distribs., Inc. v. New England Apple Prods. Co.*, 969 F.2d 552, 557 (7th Cir.1992), citing *Skil Corp. v. Rockwell Int'l Corp.*, 375 F.Supp. 777, 783 (N.D.Ill.1974); *see also Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1383 n. 3 (5th Cir.1996); *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir.1992); *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 963–64 (D.C.Cir.1990) (Thomas, J.); *Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv., Inc.*, 911 F.2d 242, 244 (9th Cir.1990). Where the statement in question is actually false, then the plaintiff need not show that the statement either actually deceived consumers or was likely to do so. But where the statement is literally true or ambiguous, then the plaintiff is obliged to

---

**2.** Section 43(a)(1) of the statute provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

prove that the statement is "'misleading in context, as demonstrated by actual consumer confusion.'" *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1089 (7th Cir. 1994), quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir.1992); *see also, e.g., United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180–81, 1182–83 (8th Cir.1998) (collecting cases).

Congress has empowered the Federal Trade Commission to prevent unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce. 15 U.S.C. § 45(a)(2); *see also id.* § 46. Toward that end, the FTC has published a series of guidelines addressing deceptive pricing. 16 C.F.R. Pt. 233. Although they are not "as stringent or detailed" as some of the state initiatives in this area, these guidelines have served as "the benchmark standard" for more than thirty years. *See When is a Sale Not a Sale?, supra,* 5 Antitrust at 29. Like the Illinois regulations, the federal provisions offer specific guidance as to when comparisons between the discount and regular price of an article are deceptive:[3]

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the un-usual value he expects. In such a case, the reduced price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $____"), unless substantial sales at that price were actually made.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain", Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X pens, Were $10, Now Only $7.50!" This is obviously a false claim. The advertised "bargain" is not genuine.

. . . .

16 C.F.R. § 233.1.

Taking its cue from these regulatory provi-

---

**3.** The parties have not addressed the question whether violation of the federal guideline would establish that Finlay's advertisements were literally false or merely misleading. Typically, that is a factual assessment dependent on the content and meaning of the ad. *See BASF, supra,* 41 F.3d at 1091; *Abbott Labs., supra,* 971 F.2d at 13. If Finlay's advertisements are literally true but misleading, then the district court's conclusion that Sanfield had not established consumer deception may doom the Lanham Act claim. (Whether the court's assessment in that respect is erroneous is not a matter before us. *See* Sanfield Reply Br. 7.) But this is a matter for the court to take up on remand.

sions,[4] Sanfield contends that when Finley advertises its jewelry at 50 percent (or some other percentage) off the "regular" price, it is deceiving consumers, because in fact Finlay rarely if ever sells the jewelry at that price and (as Sanfield sees it) makes no good faith effort to do so. The "bargain" that Finlay purports to offer prospective customers is therefore no bargain at all, as Sanfield sees it, because the ostensibly discounted price is the price at which Finlay makes (and expects to make) the vast majority of its sales.

The district court thought that it did not need to consider either regulation. The court appeared to understand these regulations as pertinent only to the affirmative defense Finlay had raised against Sanfield's state and federal claims. (Finlay asserted that because it had periodically and in good faith offered its jewelry for sale at the "regular" price, and so on, the advertised discounts were not misleading.) Of course, having concluded that Sanfield lacked proof that Finlay's advertised discounts were deceptive, the district court did not need to reach Finlay's affirmative defense. And so, the court reasoned, the state and federal regulations were immaterial to resolution of the case. 999 F.Supp. at 1108 n. 9.

▪ Because the regulations offer substantial guidance as to the very type of discount advertising at issue in this suit, however, the court erred in failing to consider them. The regulations do not simply offer the defendant safe harbor against a charge of deceptive advertising; they essentially define the circumstances under which the advertising of a discount price is deceptive. The state provision, having been given the force of law by the Illinois legislature, see 815 ILCS 505/4, is binding on the court. *United Consumers Club, Inc. v. Attorney General*, 119 Ill.App.3d 701, 75 Ill.Dec. 35, 456 N.E.2d 856, 859 (1983). The federal provision, found among a series of industry guides published by the FTC, does not carry equivalent authoritative weight. *See* 16 C.F.R. § 1.5; *F.T.C. v. Mary Carter Paint Co.*, 382 U.S. 46, 47–48, 86 S.Ct. 219, 221, 15 L.Ed.2d 128

(1965). Even so, as the administrative agency charged with preventing unfair trade practices, the Commission's assessment of what constitutes deceptive advertising commands deference from the judiciary. *F.T.C. v. Colgate–Palmolive Co.*, supra, 380 U.S. at 385, 85 S.Ct. at 1042–43; *see also Kraft, Inc. v. F.T.C.*, 970 F.2d 311, 320 (7th Cir.1992), cert. denied, 507 U.S. 909, 113 S.Ct. 1254, 122 L.Ed.2d 652 (1993). It is no doubt for that very reason that even the Illinois statute mandates consideration of the FTC's views on what constitutes an unfair, misleading, or deceptive act. 815 ILCS § 505/2, quoted in n. 1, *supra*.

▪ We reject Finlay's suggestion that the district court was not required to address these regulations because Sanfield's complaint did not cite them. Finlay Br. 24. Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim"; it does not require the plaintiff to plead legal theories. *E.g., Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 n. 8 (7th Cir.1998). It is of no moment, consequently, that the complaint did not identify either of the two regulations on which Sanfield stakes its case. *See id.* (complaint's citation of single statutory subsection did not preclude reliance upon another subsection that was not cited), citing *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992) (complaint need not cite statute on which claim is based). Finlay certainly cannot claim any sort of surprise: the second amended complaint was framed in the very language of these regulations (R. 164 Count I ¶ 8, Count II ¶ 8, Count III ¶¶ 7–8), briefing on the parties' unsuccessful cross-motions for summary judgment addressed these provisions at length (R. 78 at 13–15; R. 84 at 8–13; R. 95 at 5–7, 13–15; R. 99 at 7–8, 8–11), the magistrate judge's order denying those motions referenced the regulations (R. 124 at 20–24), and Sanfield's proposed findings of fact and conclusions of law expressly relied upon the regulations to establish deception (R. 173 at 7–11).

---

4. We recognize that the federal guideline is merely that, and as such it does not have the same force as the Illinois regulation. *See infra* at

11. For the sake of convenience, however, we will at times refer to both provisions as "regulations."

■ Nor are we persuaded that the court effectively addressed the elements of the regulations without acknowledging as much. *See* Finlay Br. 26. True enough, the court did at the outset recite the five grounds on which Sanford argued that Finlay's advertisements were deceptive, 999 F.Supp. at 1104–05, and the first four of those grounds emanated directly from the regulations.[5] The balance of the court's order, however, reflects no consideration of the factors that the state and federal regulations deem pertinent—whether Finlay made substantial sales of the discounted jewelry at the regular price, for example, or whether it genuinely offered the jewelry for sale at the regular price for substantial periods of time.[6]

Indeed, portions of the court's analysis stand in evident tension with the regulatory analysis. Perhaps the most obvious example is the court's observation that "[t]here is nothing inherent in the term 'regular price[ ]' ... suggest[ing] that defendant either sells those jewelry items at that price or that it offers them at that price for any particular period of time." 999 F.Supp. at 1105. That assessment is nigh impossible to reconcile with either the state or the federal regulation, each of which indicates that an advertised comparison to the regular price is deceptive if the advertiser does not make, or does not genuinely try to make, substantial sales of the product at that price. Both provisions, in other words, presume that the term "regular price" *does* have an inherent meaning in terms of the sales made or attempted at that price. The court also remarked:

> Deception, like beauty, is in the eye of the beholder. If consumers generally understand that a retailer makes little or no concerted effort to sell at a stated regular price, then stating the price as regular would be neither deceptive nor misleading. It might impact the efficacy of the promoted sale, but it would not deceive. If the consuming public held the opposite belief, that is, that [the] regular price is the price that defendant[ ] regularly and genuinely offer[s] the advertised items for sale at, then that would evidence deception. Absent consumer perceptions, however, whether defendant actually offers or sells the items at [the] regular price proves little, if anything, in this context.

*Id.* That logic departs from the state and federal provisions in two important ways. Like the court's observation as to the inherent meaning of the term "regular price," it disregards the judgment of state and federal regulators as to the deceptive potential of that term. The Illinois regulation, for example, does not simply suggest that a comparison to the regular price *might* be misleading if substantial sales have not been made or attempted at that price, it unequivocally provides that the comparison *is* misleading unless one of those criteria is met. 14 Ill. Admin. Code § 470.220. Moreover, in elevating subjective consumer perceptions to preeminence, the court's approach appears to demand proof of actual consumer deception before an act is deemed deceptive. To that extent, it is at least in part inconsistent with the federal and state statutes alike, neither of which (as we have already noted) focuses strictly on actual perception to the exclusion of practices which are *likely* to mislead. *See* 815 ILCS § 505/2 (declaring unfair or deceptive acts unlawful regardless of "whether any person has in fact been misled, deceived or damaged thereby"); *United Indus. Corp. v.*

---

**5.** The four grounds were these: (1) that Finlay does not intend to offer any of the discounted items at the regular price; (2) that Finlay does not, in fact, sell a substantial number of these items at the regular price; (3) that Finlay does not offer the items for sale at the regular price for a substantial period of time; and (4) that Finlay does not offer the items for sale at the regular price with a good faith intention to sell them at that price. *See* 999 F.Supp. at 1104.

**6.** In passing, the court observed that "there is no magic number of days for which an item is offered for sale that equates with compliance within the meaning of the regulations." 999 F.Supp. at 1108 n. 9. Beyond that observation, however, the court made no finding as to whether Finlay's regular prices were bona fide in the sense that it offered the products for sale at those prices for an appropriate length of time. On the contrary, the court's "no magic number" remark came directly on the heels of its announcement that "the court does not consider whether defendant complied with federal and state regulations pertaining to the amount of time, the way and the purpose for which an item is offered for sale at its regular price." *Id.*

*Clorox Co.*, 140 F.3d at 1181, 1183 (noting that proof of actual confusion is not required under Lanham Act when the challenged advertising is literally false, nor where advertiser has acted willfully or with intent to deceive).

We are obliged, consequently, to remand the case to the district court for reconsideration of the evidence in light of the state and federal regulations. Those provisions speak directly to the type of promotions at issue here. Reflecting as they do the considered judgment of the Illinois Attorney General and the Federal Trade Commission as to what is likely to deceive consumers, *Colgate–Palmolive*, 380 U.S. at 385, 85 S.Ct. at 1042–43, they should serve as the starting, if not the ending, point of the court's analysis.[7] We express no opinion, of course, as to the outcome of this analysis. Finlay's able attorneys have argued that their client's promotional practices in fact do comply with the federal and state regulations and so are not deceptive. Whether they are correct is a question for the district court to consider in the first instance.

### B.

▬▬▬▬ Finlay urges us to affirm the judgment on the alternative ground that Sanfield produced no proof that it was injured as a result of the alleged deception. The Consumer Fraud and Deceptive Business Practices Act grants a private right of action only to a person "who suffers actual damage as a result of a violation of this Act." 815 ILCS 505/10a(a). Therefore, although the Illinois Attorney General can file suit in an effort to stop deceptive advertising without having to prove that anyone has actually been injured, the private plaintiff must establish an injury attributable to the statutory violation. *Ryan v. Wersi Electronic GmbH & Co.*, 59 F.3d 52, 53–54 (7th Cir.1995) (per curiam); *Zekman v.*

*Direct American Marketers, Inc., supra*, 231 Ill.Dec. 80, 695 N.E.2d at 860–61; *Martin v. Heinold Commodities, Inc.*, 163 Ill.2d 33, 205 Ill.Dec. 443, 643 N.E.2d 734, 747, 751 (1994); *Smith v. Prime Cable of Chicago*, 276 Ill. App.3d 843, 213 Ill.Dec. 304, 658 N.E.2d 1325, 1337 (1995); *Tarin v. Pellonari*, 253 Ill.App.3d 542, 192 Ill.Dec. 584, 625 N.E.2d 739, 747–48 (1993); *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill.App.3d 1032, 171 Ill.Dec. 835, 594 N.E.2d 1355, 1361–62 (1992).[8] Comparable proof is required in order to recover under the Lanham Act. *See BASF Corp. v. Old World Trading Co., supra*, 41 F.3d at 1093, citing, inter alia, *Grove Fresh Distributors, Inc. v. New England Apple Prods. Co., supra*, 969 F.2d at 556; *see also, e.g., Clorox*, 140 F.3d at 1180. As evidence of injury, Sanfield claims that it was forced to spend significant sums of money on corrective advertising informing consumers that its own regular prices compare favorably to Finlay's discounted prices. Sanfield also asserts that prospective customers have literally walked out of its store when their requests for a fifty-percent discount were refused, so fooled were these customers into thinking that Finlay's discounts offered the best deals in town. Finlay asserts that the record does not support either notion.

Finlay's argument may or may not have merit, but the district court is best situated to address it in the first instance. The court found it unnecessary to reach the question of injury given its resolution of the case on other elements of Sanfield's claims. *See* 999 F.Supp. at 1109. However, in denying Finlay's motion for judgment as a matter of law at the close of Sanfield's case, *see* FED. R.CIV.P. 52(c), the court did find that Sanfield had presented sufficient evidence on *all* elements of its claims. *See* R. 168; Tr. 551–52; *see also* Tr. 746, 752. Obviously, then, the district court was at least preliminarily

---

**7.** The validity of either provision has not been questioned here. As we have recognized above, the federal guideline may carry somewhat less weight than the state regulation; it may therefore guide, without constraining, the court's analysis under the Lanham Act. But Finlay does not suggest that the guideline does not at the least merit consideration in the court's analysis.

**8.** Where the plaintiff brings suit as a consumer, she will therefore have to show that she was in fact deceived in order to establish injury. *See Duran*, 171 Ill.Dec. 835, 594 N.E.2d at 1362. So although proof of actual deception is not always necessary to establish a violation of either the state or the federal statute, as we discussed above, it will in some cases be necessary to establish the plaintiff's right to relief.

persuaded that Sanfield had come forward with proof sufficient to carry its burden on the question of injury and damages. We leave it to the district court on remand to revisit this issue as necessary.

## III.

The judgment below is VACATED and the case is REMANDED for further consideration consistent with the foregoing opinion.