**B. SANFIELD, INC., Plaintiff,**

v.

**FINLAY FINE JEWELRY CORPORATION,
Defendant.**

**No. 93 C 20149.**

United States District Court,
N.D. Illinois,
Western Division.

Nov. 16, 1999.

Erik K. Jacobs, Hyzer, Hyzer & Zimmerman, Brian D. shore, Guyer & Enichen, Rockford, IL, for Plaintiff.

Tyrone C. Fahner, Mayer, Brown & Platt, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

REINHARD, District Judge.

#### INTRODUCTION

Plaintiff, B. Sanfield, Inc. ("Sanfield"), sued defendant Finlay Fine Jewelry Corporation ("Finlay") alleging Finlay's advertising scheme violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2 ("Consumer Fraud Act") and the Lanham Act, 15 U.S.C. § 1125(a). After a 4–day bench trial, this court found that Sanfield failed to prove Finlay's advertising practices were deceptive, and ruled in favor of Finlay on Sanfield's complaint.[1] *B. Sanfield,*

---

1. The parties settled Finlay's counter-claims during trial.

*Inc. v. Finlay Fine Jewelry Corp.*, 999 F.Supp. 1102 (N.D.Ill.1998). Sanfield appealed, and the Seventh Circuit vacated the judgment and remanded the case for further consideration, specifically directing this court to consider the Illinois regulations and federal guidelines on the subject. *B. Sanfield, Inc. v. Finlay Fine Jewelry, Corp.*, 168 F.3d 967 (7th Cir.1999).

## BACKGROUND

The court adopts and reiterates all the findings of fact developed from the bench trial as in its March 5, 1998, memorandum opinion and order. However, a few facts are particularly relevant, and will be detailed in this opinion. The parties have filed briefs on remand, arguing the points detailed in the Seventh Circuit opinion.[2]

The items at issue in this lawsuit are four types of gold jewelry, i.e., chains, bracelets, earrings and charms. Finlay originally prices these items at about 5.5 times their cost ("regular price"), with a typical discount of 40–60% off the regular price ("sale price"). Finlay develops a gold jewelry sale rotation schedule, with the goal of offering its gold jewelry at regular price for about one third of the fiscal year. However, Finlay does not strictly adhere to that schedule.

## DISCUSSION

### I. Consumer Fraud Act

■ To establish a claim under the Consumer Fraud Act, plaintiff must prove: (1) defendant engaged in a deceptive act or practice; (2) defendant intended that a party rely on the deception; and (3) the deception occurred in a course of conduct involving trade or commerce. *Zekman v. Direct American Marketers, Inc.*, 182 Ill.2d 359, 231 Ill.Dec. 80, 695 N.E.2d 853, 860 (1998). The parties have stipulated as to the third element, and the evidence is clear that Finlay intended the public rely on its discount advertising, the second ele-

ment. The statute does not require proof of actual reliance, nor proof that anyone was actually deceived or damaged. *B. Sanfield*, 168 F.3d at 971. However, an advertisement is deceptive if it creates the likelihood of deception or has the capacity to deceive. *Garcia v. Overland Bond & Inv. Co.*, 282 Ill.App.3d 486, 218 Ill.Dec. 36, 668 N.E.2d 199, 203 (1st Dist.1996).

■ The Illinois Attorney General has promulgated regulations pursuant to the Consumer Fraud Act that further defines unfair or deceptive acts. *See* 14 Ill. Admin. Code § 470.220; *see also* 815 ILCS 505/4. As these regulations have been given the force of law by the Illinois legislature, they are binding on the court. *See* 815 ILCS 505/4; *B. Sanfield*, 168 F.3d at 973. In finding that Finlay's advertising scheme was not actually deceptive, this court did not consider the regulations. Instead, this court found plaintiff had failed to show the advertisements were deceptive because there was no evidence the consumer was deceived. The Seventh Circuit disagreed with this court's analysis, finding the regulations to be relevant to Sanfield's prima facie case because they define the circumstances under which advertising of a discount price is deceptive.

■ The relevant regulation states: It is an unfair or deceptive act for a seller to compare current price with its former (regular) price for any product or service, . . . unless one of the following criteria is met:

> (a) the former (regular) price is equal to or below the price(s) at which the seller made a substantial number of sales of such products in the recent regular course of its business; or

> (b) the former (regular) price is equal to or below the price(s) at which the seller offered the product for a reasonably substantial period of time in

---

2. Finlay filed a surreply, purportedly to address new arguments made by Sanfield in its reply brief, which the court took under advisement. Other than subsection (1), burden

of proof, the surreply is essentially a repetition of previous arguments, or argument regarding irrelevant issues. The surreply is stricken, save subsection (1).

the recent regular course of its business, openly and actively and in good faith, with an intent to sell the product at that price(s).

14 Ill. Admin. Code § 470.220

The stipulated sales at regular price versus sale price make it clear that subsection (a) is not applicable to this case. As the Seventh Circuit noted, the regulations define what acts are deceptive, so the court holds that it is plaintiff's burden to prove Finlay violated the regulation.

Finlay creates a sale schedule in an attempt to offer its gold jewelry at the regular price for 30 days out of every fiscal quarter. Sanfield's arguments in this respect are that 30 days is not a reasonably substantial period of time, but in any event, Finlay does not adhere to the schedule. The regulations and statute do not specify how many days would be reasonable, and the court is not inclined to mandate a specific number. Taken alone, one-third is not necessarily unreasonable. However, the court reads Sanfield's arguments as primarily attacking the other elements of the regulation, especially the good faith and intent to sell the product at the regular price.

The admitted facts are that Finlay set the regular price, at approximately 5.5 times the cost, and sale price for each item at issue at the same time, with the goal being that each item 50% off would meet Finlay's gross margin goals. Finlay scheduled all of its regular price days on weekdays, except for rare Sundays, and there are no regular price days during the month of December. As for the days scheduled to be regular price, Finlay did not strictly comply, and admits to engaging in pre-selling and customer accommodations at the sale price if requested by the customer. Sanfield introduced receipts, dated several different regular price days, of items that were sold at a sale price. Finlay's untenable argument is that those were all either customer accommodations, a limited practice, or the days had been changed to sale days. The court finds that Sanfield has presented enough

evidence for the court to find that regardless of the number of days Finlay scheduled for regular price offerings, Finlay did not in good faith intend to sell the products at the regular price, and did not in fact sell the products at the regular price in accordance with the schedule.

The stipulated sales at regular and sale prices support that finding. Finlay made little if any sales of the items at regular price over the course of several years at its Rockford stores. Finlay was obviously not concerned with the lack of sales at regular price, and in fact, intentionally chose not to monitor information of the number of gold jewelry items sold on a given day and at what price. Finlay calculates the regular and sale prices of its gold jewelry simultaneously with the objective that when an item is sold at a 50% discount it will yield the desired gross margin. Finlay monitors only whether a store is meeting its gross margin goal.

As the court finds under the facts that Finlay's advertising was unfair or deceptive as defined by the regulation, the court finds Sanfield has proven that Finlay engaged in a deceptive act or practice barred by the Consumer Fraud Act. As the court indicated earlier, Sanfield has satisfied the other two elements of its claim.

▆▆ Finlay argues, correctly, that Sanfield must still prove proximate cause and damages. When a private plaintiff brings a claim for deceptive advertising under the Consumer Fraud Act, that plaintiff must show both a violation and resultant damages. *B. Sanfield, Inc.*, 168 F.3d at 975; *Ryan v. Wersi Elec. GmbH & Co.*, 59 F.3d 52, 53–54 (7th Cir.1995) (per curiam); *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill.App.3d 1032, 171 Ill.Dec. 835, 594 N.E.2d 1355, 1362 (2d Dist.1992). Sanfield contends it was harmed by Finlay's deceptive advertising in three ways: (1) Sanfield lost potential customers to Finlay; (2) Sanfield lost customers who did not make a purchase because Sanfield would not discount 50% after the customer's inquiry; and (3) Sanfield incurred increased adver-

tising costs to compete with Finlay. However, Sanfield did not offer any evidence of lost profits, nor proofs of increased advertising spending, other than Sanfield's owner, Lee Hartsfield, testifying that he spent thousands on corrective advertising and had several customers leave the store when he would not sell at half price. Hartsfield also speculated as to the number of potential customers Sanfield lost to Finlay.

The Consumer Fraud Act provides for the recovery of "actual economic damages or any other relief which the court deems proper" to persons or businesses injured by defendant's violation of the Act. 815 ILCS 505/10a(a). The court may also grant injunctive relief where appropriate and may award attorney's fees and costs to the prevailing party. 815 ILCS 505/10a(c).

As evidence of damages, Sanfield contends it spent thousands of dollars on corrective advertisements. However, the only evidence offered by Sanfield is the general, conclusory testimony of Hartsfield. Without other evidentiary support, the court does not find his testimony to be credible. As for Sanfield's customers that walked out of the store when they could not get a 50% discount off of a legitimate regular price, there is no causal link to Finlay's advertisements or method of discounting.

Finally, as to Sanfield's claim of lost potential customers because they were deceived by Finlay's pricing methodology, Sanfield has offered no direct or indirect proof of lost customers. In fact, the proofs show that Sanfield's sales increased during the relevant time period. In addition, Finlay's survey evidence shows that Finlay and Sanfield did not compete exclusively with each other; rather, there were numerous other competitors for sales of the gold jewelry at issue.

■ At trial and on appeal, Sanfield argued that it is entitled to disgorgement of Finlay's profits for the years in question as damages. Disgorgement is an equitable remedy based upon the theory of unjust enrichment. *See Keller Med. Specialties*

*Prod., Inc. v. Armstrong Med. Indus.*, 842 F.Supp. 1086, 1094 (N.D.Ill.1994). Courts award disgorgement in limited situations, primarily when a defendant's profits represent unjust enrichment derived from diversion of business that clearly would otherwise have gone to the plaintiff. *See Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 772 (2d Cir.1984). The evidence presented in this case does not support such an award. Not only did Sanfield's profits increase over the relevant time period, but there were numerous other competitors for sales of gold jewelry in the market. Sanfield has presented no credible evidence that Finlay profited at Sanfield's expense. Thus, the equitable remedy of disgorgement is not available.

■ Although the Illinois Attorney General can file suit in an effort to stop deceptive advertising without having to prove anyone has actually been injured, a private plaintiff must establish an injury attributable to the statutory violation. *B. Sanfield, Inc.*, 168 F.3d at 975. Here, Sanfield has not done so and, consequently, its cause of action fails.

Sanfield is also seeking injunctive relief, which it is not entitled to absent a showing of a violation and resultant actual damages. *Smith v. Prime Cable of Chicago*, 276 Ill.App.3d 843, 213 Ill.Dec. 304, 658 N.E.2d 1325, 1337(1st Dist.1995) (citations omitted). As the court has already found Sanfield has failed to show damages, Sanfield's request for injunctive relief is denied.

■ Pursuant to the Consumer Fraud Act, the court can award punitive damages if the defendant's wrongful conduct was outrageous either because it was performed with an evil motive or with reckless indifference to the rights of others. *See Ekl v. Knecht*, 223 Ill.App.3d 234, 165 Ill. Dec. 760, 585 N.E.2d 156, 163 (2d Dist. 1991). Sanfield argues it is entitled to punitive damages because of Finlay's intentional disregard of sales at regular price. Sanfield is not entitled to punitive

damages because it did not prove it was damaged by Finlay's advertising practices.

■ The court can award attorney's fees at its discretion to the prevailing party. Sanfield has not prevailed because it failed to prove an injury proximately caused by Finlay's conduct. The reference to "other relief" in the statute does not give the court free reign to award any damages it chooses. *See Martin v. Heinold Commodities*, 163 Ill.2d 33, 205 Ill. Dec. 443, 643 N.E.2d 734, 751 (1994).

## II. Lanham Act [3]

■ To establish a claim under the false or deceptive advertising prong of section 43(a) of the Lanham Act, Sanfield must prove: (1) a false statement of fact by Finlay in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material; (4) Finlay caused its false statement to enter interstate commerce; and (5) Sanfield has been or is likely to be injured as a result of the false statement. *B. Sanfield, Inc.*, 168 F.3d at 971; *see also Hot Wax, Inc.*, 191 F.3d at 819; 15 U.S.C. § 1125(a)(1). A statement is false under the Lanham Act if it is literally false, but also if it is literally true or ambiguous but conveys a false impression, is misleading in context or is likely to deceive consumers. *Hot Wax, Inc.*, 191 F.3d at 821. When a statement is actually false, a plaintiff need not show the statement either actually deceived customers or was likely to do so. However, when the statement is literally true or ambiguous, the plaintiff must prove the statement is misleading by producing evidence of actual consumer confusion. *Id.* If a defendant acted willfully or intended to confuse or mislead consumers, then the court need not consider actual consumer confusion. *B. Sanfield*, 168 F.3d at 974–75.

**3.** While the lack of proof of damages is also fatal to recovery under the Lanham Act, *see B. Sanfield, Inc.*, 168 F.3d at 975; *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th

■ The federal counterpart to the Illinois regulations are the federal guidelines, promulgated by the Federal Trade Commission. As the name suggests, the guidelines do not carry the equivalent force of law, but must be given deference. *Id.* at 973. The guideline at issue tracks the language of the Illinois regulation, i.e., a bona fide price "is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of [his] business, honestly and in good faith..." 16 C.F.R. § 233.1(b). As the court has already found in the context of the state regulation, Finlay did not establish its regular prices in good faith.

The Seventh Circuit raised the question of whether a determination that Finlay violated the federal guideline necessarily meant that its advertising was literally false. *B. Sanfield*, 168 F.3d at 972 n. 3. This court already found that Sanfield's evidence failed to establish literal falsity. *B. Sanfield*, 999 F.Supp. at 1108. The guidelines at issue do not change that conclusion. Finlay's advertisements, however, are misleading, thus violating the first element of a Lanham Act claim. Nevertheless, this court has found that Sanfield failed to show actual consumer confusion, a necessary element if the advertisement is literally true but misleading. *Id.* Thus, Sanfield's claim under the Lanham Act fails.

## CONCLUSION

In conclusion, although Sanfield successfully proved that Finlay's discount advertising practice was unfair or deceptive under the Illinois Consumer Fraud Act, Sanfield failed to prove it suffered any damages as a result. Sanfield cannot recover actual economic damages, disgorgement of Finlay's profits, injunctive relief, punitive damages, or attorney's fees under the Consumer Fraud Act. Sanfield has not

Cir.1999), this court, for completion of all issues raised, will separately decide whether the other elements for a Lanham Act claim have been met.

established a violation of the Lanham Act. Judgment is entered for Finlay on all claims.